UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| ROCKWELL AUTOMATION, INC., | CIVIL ACTION NO. 17-415 |
| VERSUS | JUDGE ELIZABETH FOOTE |
| RONALD J. MONTGOMERY, ET AL. | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM ORDER

Before the Court is Defendants' motion to dismiss. Record Document 10. Plaintiff Rockwell Automation, Inc. ("Rockwell") brought this action against Defendants Ronald J. Montgomery ("Montgomery") and Custom Control & Design, LLC ("Custom Control") alleging four claims arising out of the same course of events. Record Document 1. Defendants moved to dismiss all claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. For the reasons discussed below, Defendants' motion [Record Document 10] is **DENIED**.

## I. Background

Plaintiff is a corporation that works in the "development and production of industrial components and automation products and services." Record Document 1, p. 5. Defendant Custom Control is a purchaser of goods and software from Plaintiff, sometimes directly and sometimes through a third-party distributor. Id., p. 8. Montgomery is an officer of Custom Control. Id. Plaintiff alleges that Defendants misrepresented Custom Control as a system integrator – a purchaser who adds value to the product before reselling it – in order to obtain a steep discount on Rockwell's Toolkit

software. Record Document 15, p. 8. This software normally sells for $650,000, but is discounted for system integrators to $50,000. Id., p. 9. The software's license sets out the system integrator requirement and also the authorized uses of the software. Record Document 1, p. 7. Plaintiff also asserts that Defendants got a discount on thousands of pieces of hardware and resold them at lower prices, underselling Rockwell's authorized distributors as a result, and causing significant damages to Plaintiff. Id. Custom Control made some purchases directly from Rockwell and others through a third party distributor. Id., p. 8. Plaintiff brings four claims against Defendants on the basis of this conduct: fraud, unfair trade practices, breach of contract, and copyright infringement. Record Document 1, pp. 1-2.

## II. Discussion

### A. Standard of Review

In order to survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint must "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678. In determining whether the plaintiff has stated a plausible claim, the court must construe the complaint in the light most favorable to the plaintiff, see In re Great Lakes Dredge & Dock Co. LLC, 624 F.3d 201, 210 (5th Cir. 2010), and accept as true all of the well-pleaded factual allegations in the complaint. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); In re Katrina

Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2009). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. Thus, the Court does not have to accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." Plotkin v. IP Axess Inc., 407 F.3d 690, 696 (5th Cir. 2005).

B. Fraud

Plaintiff alleges that Defendants intentionally misrepresented that Custom Control was a system integrator in order to receive a discount on software, resulting in significant loss of income to Plaintiff. Record Document 1, p. 8. Defendants assert that Plaintiff has not stated a claim for fraud because there was no contract between the parties. Record Document 10-1, p. 5. Louisiana recognizes causes of action for fraud between parties to a contract (La. Civ. Code art. 1953) and for delictual fraud, which does not require the existence of a contract. La. Civ. Code art. 2315; see Newport Ltd. v. Sears, Roebuck & Co., 6 F.3d 1058 (5th Cir. 1993) (discussing a plaintiff's parallel fraud claims under both article 1953, which "pertains only to parties to a contract," and article 2315, under which a plaintiff "need not prove the existence of a contract"). In order to recover under article 1953, Plaintiff must show: (1) the existence of a contract, (2) that Defendants misrepresented the truth with intent to gain an unjust advantage or to cause Plaintiff to suffer a loss, and (3) that the misrepresentation caused actual or probable damages to Plaintiff. Id. at 1067. To recover under article 2315, Plaintiff must show: "(1) a misrepresentation of a material fact, (2) made with the intent to deceive,

and (3) causing justifiable reliance with resultant injury." Id. at 1068.

Plaintiff argues that it has adequately pled both forms of fraud. Plaintiff alleges that the parties entered into a contract for the sale of the Toolkit software, in the form of the license agreement, that Defendants intentionally misrepresented that Custom Control was a system integrator in order to obtain a steep discount on the software, that Plaintiff reasonably relied on that misrepresentation, and that Plaintiff was deprived of significant income as a result. Record Document 1, p. 13. At this stage, the Court must accept all of Plaintiff's factual allegations as true. Plaintiff has alleged sufficient facts to state a claim for fraud under both article 1953 and article 2315. Defendants' motion to dismiss Plaintiff's fraud claim is **DENIED**.

C. Unfair Trade Practices

Plaintiff's second claim is brought under the Louisiana Unfair Trade Practices Act ("LUTPA"). La. R.S. 51:1409(A). This claim centers around Defendants' alleged unauthorized resale of Rockwell hardware products. LUTPA provides for private enforcement actions: "Any person who suffers any ascertainable loss of money or movable property...as a result of the use or employment by another person of an unfair or deceptive method, act, or practice dclared unlawful...may bring an action...to recover actual damages." Id. Thus, in order to prove a violation of LUTPA, Plaintiff must show: "(1) an unfair or deceptive trade practice declared unlawful; (2) that impacts a consumer, business competitor or other person to whom the statute grants a private right of action; (3) which has caused ascertainable loss." Who Dat Yat LLC v. Who Dat?

Inc., 2011 WL 39043 at *3 (E.D. La. Jan. 4, 2011). Defendants argue that Rockwell is not a proper plaintiff in a LUTPA claim because LUTPA allows claims to be brought only by consumers or business competitor, and Rockwell is neither. This argument ignores both the plain language of the statute and the interpretation of LUTPA by the Louisiana Supreme Court. In Cheramie Servs., Inc. v. Shell Deepwater Prod., Inc., a plurality of the court reasoned that the plain language of the statue allows "any person" who suffers an ascertainable loss to bring a private enforcement action for unfair trade practices, not just competitors and consumers. 2009-1633 (La. 4/23/10); 35 So. 2d 1053, 1056-57 ("Although business consumers and competitors are included in the group afforded this private right of action, they are not its exclusive members."); see also Frontline Petroleum Training Sys., LLC v. Premier Safety Mgmt., Inc., 2013 WL 6667332, at *4 n. 17 (W.D. La. Dec. 17, 2013) (noting that Cheramie "cur[ed] a split in the circuits by holding that 'although business consumers and competitors are included in the group afforded this private right of action, they are not its exclusive members"); Corley v. Southeastern Metals Mfg. Co., 2011 WL 3665015, at *4 (W.D. La. Aug. 19, 2011) ("Although the LUTPA was previously interpreted to provide a cause of action only to consumers or business competitors, the Louisiana Supreme Court recently clarified that any person who asserts a 'loss of money or...property...as a result of...an unfair or deceptive method, act or practice' has standing to bring such a claim."). Thus, because Rockwell alleges that it suffered ascertainable loss as a result of unfair trade practices, it is a proper plaintiff.

Defendants also argue that because the products were sold through a distributor, any alleged misrepresentations made by Defendants would have been made to the distributor and not to Rockwell, and Rockwell's claim must therefore fail. Record Document 10-1, p. 3. This claim likewise ignores the plain language of the statute. LUTPA allows any person who suffered loss "as a result" of unfair or deceptive practices to recover. La. R.S. 51:1409(A). Rockwell need only allege that Defendants' practices were unfair or deceptive, that Rockwell was impacted, and that Rockwell suffered loss. Defendants cite no contrary law on this point.

LUTPA is broadly written and leaves the courts to determine what constitutes an unfair trade practice on a case-by-case basis. Levine v. First Nat. Bank of Commerce, 2006-0394 (La. 12/15/06); 948 So. 2d 1051, 1065; Corley, 2011 WL 3665015 at *4 ("Whether or not a particular conduct constitutes an unfair act or practice is a determination to be made by the court in each case."). An unfair or deceptive practice is one that "offends established public policy and is immoral, unethical, oppressive, unscrupulous, or substantially injurious" or that "amounts to fraud, deceit, or misrepresentation." S. Gen. Agency, Inc. v. Burns & Wilcox, Ltd., 2012 WL 3987890 at *1 (W.D. La. Sept. 11, 2012). Plaintiff alleges that Defendants intentionally misrepresented Custom Control as a system integrator, a designation entitling it to a discount on "more than 187,000 Rockwell products" that Custom Control purchased over the course of more than 7 years, causing loss to Rockwell for sale of those products at list price. Record Document 1, pp. 8-9, 14. Plaintiff has alleged facts

supporting each element of a claim under LUTPA. Defendants' motion to dismiss the LUTPA claim must therefore be **DENIED**.

D. Breach of Contract

Plaintiff alleges that Rockwell and Custom Control entered into a contract for the purchase of Rockwell's Toolkit software, and that Defendants breached that contract by reselling or transferring the license to the software. Record Document 1, p. 14, ¶ 69 ("Montgomery, on behalf of Custom Control, entered into a contract for the purchase of Rockwell's Toolkit software."). Defendants respond that "[t]here is no allegation of a contract" between Rockwell and Defendants. Record Document 10-1, p. 6. Plainly, this is untrue.

In Louisiana, in order to show breach of contract, a Plaintiff must prove: "(1) that the obligor undertook an obligation to perform; (2) that the obligor failed to perform the obligation (the breach); and (3) that the failure to perform resulted in damages to the obligee." Bayou Mosquito & Pest Mgmt., LLC v. Bellsouth Telecomm., LLC, 2013 WL 3819864 at *3 (W.D. La. July 23, 2013). Plaintiff alleges that a contract for the purchase of Toolkit software exists between the parties in the form of a software licensing agreement, that Defendants breached that contract by transferring the software license in a manner prohibited by the agreement, and that this breach caused damages to Plaintiff because others were allowed to use the software for free. Record Document 1, pp. 14-15. Accepting all of Plaintiff's allegations as true, Plaintiff has properly alleged a claim for breach of contract. Defendants' motion to dismiss the

breach of contract claim must therefore be **DENIED**.

E. Copyright Infringement

Plaintiff's final claim against Defendants is copyright infringement. Plaintiff identifies five copyrights, with their copyright registration numbers, which it says were infringed by unauthorized downloads of its software using Custom Control's license. Record Document 1, pp. 10-11. Defendants argue that Plaintiff fails to state a claim because it does not allege that Custom Control actually downloaded the software, only that the downloads were made using a software license issued to Custom Control. Record Document 10-1, p. 5.

To prove copyright infringement, a plaintiff must prove: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." BWP Media USA, Inc. v. T&S Software Assoc., Inc., 852 F.3d 436, 439 (5th Cir. 2017). Copyright infringement can be direct or secondary infringement. The Supreme Court has recognized that a party may be liable for secondary infringement through contributory infringement – intentionally inducing or encouraging direct infringement by a third party – or vicarious infringement – profiting from direct infringement of a third party while declining to exercise a right to stop or limit it. Metro-Goldwyn-Mayer Studios, Inc., v. Grokster, Ltd., 545 U.S. 913, 930 (2005). Plaintiff alleges that Defendants engaged in contributory infringement. Record Document 15, p. 18. Plaintiff alleges that it owns five valid copyrights and that Defendants intentionally induced third parties to copy the protected material. Plaintiff identifies a list of specific unauthorized

downloads, made at specified times and dates, using Custom Control's software license, by email addresses not associated with Defendants. Record Document 1, pp. 10-11. Defendants respond that this "incident" is the result of a "computer glitch." Record Document 10-1, p. 5. This is a factual dispute that the Court cannot resolve at this stage. Taking all of Plaintiff's factual allegations to be true, as the Court must, Plaintiff has stated a claim for contributory copyright infringement. Defendants' motion to dismiss this claim is therefore **DENIED**.

**III. Conclusion**

For the reasons discussed above, Defendants' motion to dismiss is **DENIED**. This matter is **REFERRED** to the Magistrate Judge to conduct a scheduling conference.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this ____ day of May, 2017.

Elizabeth Erny Foote
United States District Court